**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

COURTNEY SPENCER,

    Plaintiff,

v.                                             Civ. No. 1:21-cv-00121 MIS/JHR

MENTAL HEALTH RESOURCES, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion for Step-One Notice Pursuant to the Fair Labor Standards Act. ECF No. 19. Defendant responded to Plaintiff's Motion, and Plaintiff filed a reply. ECF Nos. 23, 27. Having considered the parties' submissions, the record, and the relevant law, the Court will grant the Motion. Plaintiff has shown there are substantial allegations that the putative collective[1] members were together the victims of a single decision, policy, or plan, and the Court therefore finds that the Complaint, ECF No. 1, satisfies the requirements for conditional certification.

## BACKGROUND

This case concerns claims brought by Plaintiff, Courtney Spencer, against Defendant Mental Health Resources, Inc., for violation of the Fair Labor Standards Act and the New Mexico Minimum Wage Act. ECF No. 1 at 2. Plaintiff, who was formerly employed by Defendant as a "CareLink NM Health Home Care Coordinator" ("Care Coordinator"), asserts that Defendant subjected her and other salaried Care Coordinators

---

[1] This Motion concerns certification of the collective action, but the case law does not always distinguish, as "the terms 'collective action' and 'class action' are often used interchangeably when referring to FLSA claims brought on behalf of a group of those similarly situated." *Martin v. Tap Rock Res., LLC*, 2020 WL 2129598, at *2 (D.N.M. May 5, 2020).

to a misclassification scheme which resulted in their being improperly unpaid for regular overtime work. ECF No. 1 at 2; ECF No. 19 at 1.

Defendant is a non-profit mental health agency that provides case management services to mentally disabled individuals. ECF No. 23 at 2; ECF No. 19 at 2. Plaintiff was hired as a Care Coordinator in July of 2018, and left her employment with Defendant in June of 2019. *See* ECF No. 23-1 at 17; ECF No. 23 at 5. During that period, she asserts she "regularly worked over 40 hours per workweek because [she] needed to do so in order to keep up with [her] caseload of 60-80 enrollees." ECF No. 19-1 at 2. She also alleges that "at least 20 Care Coordinators in New Mexico" work or worked under similar conditions. ECF No. 19-1 at 3. Plaintiff claims that despite these hours, Defendant "failed to pay . . . overtime pay for all overtime hours" she and her coworkers worked. ECF No. 19-1 at 2.

In her Motion, Plaintiff asks that the Court authorize notice to the other Care Coordinators impacted by Defendant's alleged company-wide misclassification scheme over the last three years. ECF No. 19 at 2. In support of her Motion, she has submitted her own sworn affidavit, job descriptions for the care coordinator position, and an excerpt from Defendant's employee manual. *See* ECF Nos. 19-1, 19-2, 19-3, 19-4, 19-5, 19-6.

## LEGAL STANDARD

*I.    Fair Labor Standards Act*

The Fair Labor Standards Act ("FLSA") requires employers to pay covered employees who work longer than forty hours in a given workweek "at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). As the Tenth Circuit has recognized, "[t]he purpose of FLSA overtime is to

compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost." *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1304 (10th Cir. 2011) (quoting *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948)).

Under the FLSA, an employee may bring a collective action on behalf of similarly situated employees as a remedy for violation of the FLSA. 29 U.S.C. § 216(b). The purpose of collective action is to lower costs for individual plaintiffs but nonetheless "vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). It also benefits the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Id.* Unlike Federal Rule of Civil Procedure 23 class actions, putative collective members under the FLSA must opt into the collective rather than opting out. *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001); 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). To obtain these consents, after the court finds that members of the proposed collective are sufficiently similarly situated, parties may send notice of the opportunity to opt into the collective action. *See, e.g., Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 431 (D.N.M. 2018).

    II.    Two-Stage Collective Action Certification

Under the *ad hoc* approach endorsed—but not mandated—by the Tenth Circuit, "a court typically makes an initial 'notice stage' determination of whether plaintiffs are

'similarly situated.'" *Thiessen*, 267 F.3d at 1102. A court's initial determination "decides whether a collective action should be certified for purposes of notifying potential class members." *Bustillos v. Bd. of Cnty. Comm'rs of Hidalgo Cnty.*, 310 F.R.D. 631, 663 (D.N.M. 2015). In this initial stage, "the court does not decide the merits of the underlying claims or resolve factual disputes." *Id.* at 647.

While the plaintiffs bear the burden of proving they are "similarly situated" to other potential collective members, the burden is "not great." *Id.* at 663. The plaintiff "need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Bustillos*, 310 F.R.D. at 663 (quoting *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 376 (N.D.N.Y. 1995)). At this stage, a court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102 (quoting *Bayles v. Am. Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1066 (D. Colo. 1996), *modified on recon.*, 962 F. Supp. 1346 (D. Colo. 1997)). "The court must determine whether the named and potential plaintiffs are 'similarly situated' based on the allegations in the complaint, which may be supported by sworn statements." *Deakin*, 328 F.R.D. at 432; *see also Landry v. Swire Oilfield Services*, L.L.C., 252 F. Supp. 3d 1079, 1114 (D.N.M. 2017) (A plaintiff "need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist.").

Then, after this notice and the close of discovery, a court moves to the second stage of its analysis, "using a stricter standard of 'similarly situated.'" *Thiessen*, 267 F.3d at 1103. The court may then reevaluate the conditional certification, usually prompted by

a defendant's motion to decertify the collective. *Id.* During the second stage of analysis, "a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and 4) whether plaintiffs made the filings required" before they commenced their lawsuit. *Id.*; *see also Deakin*, 328 F.R.D. at 432.

## DISCUSSION

Plaintiff has modified the proposed collective definition since filing the Motion, and now seeks conditional certification of the following collective:

> All individuals employed by Defendant as Care Coordinators who received pay on a salary basis in the last three years.

ECF No. 27 at 13. Plaintiff explains that the duties performed by Defendant's Care Coordinators include "collecting information to document Program enrollees' medical circumstances; inputting that information into [their] computer system; following established guidelines to maximize utilization of resources . . . coordinating care . . . [and] arranging appointments and referrals," among other tasks. ECF No. 19 at 3. Plaintiff has included several job descriptions for the Care Coordinator position. ECF Nos. 19-2 at 1, 19-5 at 1, 19-5 at 2. Plaintiff alleges that her substantial allegations and her declaration show that Defendant subjected its Care Coordinators to a common misclassification policy in violation of the FLSA. ECF No. 19 at 2. Plaintiff maintains that the Care Coordinators are not eligible for any exemption to the overtime protections under FLSA, and asks that the Court authorize notice to the other salaried Care Coordinators impacted by the alleged misclassification policy over the last three years. *Id.*

> I. *The Applicability of* Swales

As a threshold issue, Defendant contends the Court should apply the more demanding standards of *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021), in determining certification, in lieu of the more lenient step-one standard under the *ad hoc* approach used in this Circuit. ECF No. 23 at 2. In *Swales,* the Fifth Circuit held that instead of using a two-step conditional certification method to determine if notice should be sent to potential opt-in plaintiffs, a district court should "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated'" and then "authorize preliminary discovery accordingly." *Swales*, 985 F.3d at 441. The court found this because "FLSA's similarity requirement is something that district courts should rigorously enforce at the outset of the litigation." *Id.* at 443. Plaintiff, meanwhile, contends that the facts of *Swales* are distinct from those of this case, and that the logic of the Fifth Circuit in *Swales* therefore does not apply.

The two-step *ad hoc* procedure under *Thiessen*, while not mandatory, is favored by the Tenth Circuit. *Thiessen*, 267 F.3d at 1105 ("[T]he ad hoc approach is the best of the three approaches outlined[.]"). Additionally, in *Swales*—unlike in the instant case—the parties had already engaged in substantial discovery on the issue of whether plaintiffs and potential collective members were similarly situated, including "eleven depositions, over 19,000 documents produced, and even expert evidence." *Swales*, 985 F.3d at 441. In spite of this, the district court "felt bound by the 'conditional certification' step" to disregard merits evidence. *Id.* In *Swales,* the Fifth Circuit made clear that that "the district court has broad, litigation-management discretion" and "is not captive" to any particular

step. *Id.* at 443. The *Swales* court also found that in that particular case, which involved a threshold issue regarding the collective members' purported status as independent contractors, the two-step approach was not appropriate. *Id.* at 442.

Here, however, the proposed collective consists of employees, and discovery has not yet begun. *See* ECF Nos. 17, 18. The Court therefore finds that Defendant has not shown adequate reason to vary from the District's normal course. *See, e.g., Deakin*, 328 F.R.D. at 427; *Bustillos*, 310 F.R.D. at 631; *Landry*, 252 F. Supp. 3d at 1079. For purposes of the instant motion, the Court's inquiry is therefore limited to the "notice stage" of the process, which applies a lenient test to determine whether the potential plaintiffs are similarly situated. *Deakin*, 328 F.R.D. at 433.

  II. *Plaintiff's Representativeness and Merits Evidence*

Next, Defendant argues that Plaintiff does not fairly represent the collective on whose behalf she brings the instant action, as "she was paid as a non-exempt employee for all but a few weeks of her tenure with the company, during which period she worked no overtime," and that her "detailed timecards fail to support that she ever worked overtime," which would, in any case, have contravened Defendant's written policy. ECF No. 23 at 1. Defendant also alleges that Plaintiff is without personal knowledge as to its practices after her employment ended on June 17, 2019, and thus cannot attest to the uniformity of payroll and classification practices thereafter. *Id.* at 1-2. Plaintiff, meanwhile, contends that her filings suffice to offer substantial allegations, which satisfy the "lenient burden" of this stage. ECF No. 27 at 5.

At this stage, the Court may consider several factors, including "whether potential class members: (i) have the same employer; (ii) are subject to the same employer

7

practices; (iii) suffer the same method of calculation of wages owed; and (iv) allege FLSA violations based on the same conduct[.]" *Bustillos*, 310 F.R.D. at 664. The Court does not, however, "decide the merits of the underlying claims or resolve factual disputes." *Id.* at 647; *see also Deakin*, 328 F.R.D. at 433.

Defendant cites *Guarriello v. Asnani,* 517 F. Supp. 3d 1164 (D.N.M. 2021), and *Eagle v. Freeport-McMoran, Inc.*, 2016 WL 7494278 (D.N.M. Aug. 3, 2016), for the proposition that even the lenient initial certification standard "requires plaintiff to provide more than his own speculative allegations, standing alone." ECF No. 23 at 10. In *Guarriello*, however, the court actually granted conditional certification based on Plaintiff's declarations and other evidence, merely limiting the collective to servers employed in New Mexico. *Guarriello*, 517 F.Supp 3d at 1175-76. Meanwhile, in *Eagle*, the plaintiff submitted pay records which appeared to contain mere errors—in lieu of affidavits asserting that plaintiffs worked unpaid overtime, or that the pay records did not fully capture the hours actually worked—and thus, the court did not grant conditional certification. *Eagle*, 2016 WL 7494278 at *6.

Here, however, the declaration of Plaintiff, as well as the other evidence attached to her Motion, support Plaintiff's description of job duties as well as the alleged misclassification of Defendant's Care Coordinators. ECF No. 19-1 at 1; ECF No. 19-2 at 1; ECF No. 19-5 at 1-2, 4, 6. Additionally, in her declaration Ms. Spencer states the basis on which she believes there are individuals with identical job duties who have been subject to Defendant's same wage policy. Specifically, in the declaration Ms. Spencer states:

> I base my belief and knowledge of Defendant's companywide policies on (1) conversations I've had with other Care Coordinators who have talked with me about their job duties, hours of work, and how Defendant paid them during their employment; (2) observing other Care Coordinators perform their job duties; (3) CPR training that I attended with other Care Coordinators; and (4) weekly meetings that I attended with other Care Coordinators.

ECF No. 19-1 at 3. She also provides the names of two coworkers who she thinks might be similarly situated and wish to opt-in. *Id.* She further asserts that her coworkers have identical job duties and job titles. *Id.*

Named Plaintiff Courtney Spencer's declaration also supports her position that she is similarly situated to members of the potential collective action. ECF No. 19-1 at 3. Specifically, Ms. Spencer asserts in her declaration that there are others who "work/worked under the same or similar conditions" as she did and that like her, they "primarily performed Care Management work, regularly worked overtime, and were denied overtime pay because they were subjected to the same Overtime Misclassification Policy that denied [her] overtime pay." *Id.* Additionally, Plaintiff's exhibits include job descriptions that show the Care Coordinator position falls within the professional ambit that Plaintiff has described. *See* ECF No. 19-2 at 1; ECF No. 19-5 at 1-2, 4, 6.

While Defendant contests the substance of these job responsibilities, the duties and descriptions in Plaintiff's exhibits and declaration adequately support her substantial allegations at this stage. *See Maestas v. Day & Zimmeramn*, LLC, 2013 WL 11311781, at *4 (D.N.M. Dec. 20, 2013) (granting conditional certification based exclusively on allegations in the amended complaint). Defendant's arguments about the nature of the job duties go to the merits of the case, and its arguments regarding Plaintiff's similarities to the other proposed collective members goes to the second stage of certification. *See*

*Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1313 (D.N.M. 2017). During the second stage, Defendant may offer its arguments about the distinctions between Ms. Spencer and the other Care Coordinators. *Id.*; *Deakin*, 328 F.R.D. at 435. Therefore, while the Court has reviewed the declaration of CareLink Health Home Director Claudia Cordova, submitted by Defendant with its brief, the substantive nature of the job duties are not at issue at this stage.

Plaintiff adequately alleges that this policy targeted non-supervisory jobs with non-exempt duties including data collection, data entry, plan education, and care coordination. ECF No. 1 at 2; ECF No. 19 at 3; *see Deakin*, 328 F.R.D. at 434. Plaintiff adequately alleges that potential collective members, all of whom have the same employer, are subject to the same employer practices, suffer the same method of calculation of wages owed, and suffered FLSA violations based on the same conduct. *See Bustillos*, 310 F.R.D. at 664. Plaintiff's Complaint, Motion, Reply, and attached exhibits therefore meet the requirements for the first stage of collective action certification because Plaintiff has made substantial allegations that she, and individuals who share similar non-exempt job duties, were subject to the same wage policy that misclassified them as exempt and paid them on a salary basis without overtime, and Plaintiff has offered adequate proof to support these allegations at this stage. ECF Nos. 1, 19, 27.

    III.    *Time Frame of the Proposed Collective*

Finally, Defendant argues that Plaintiff's allegations of willfulness "must be stronger than mere claims that a defendant knew or had reason to know of a violation" in order to justify the three-year period requested in the collective definition. ECF No. 23 at 13. Plaintiff, in turn, contends that the three-year statute of limitations applies at the

initial stage "where a plaintiff adequately pleads it," as she maintains she has done. ECF No. 27 at 11.

Under 29 U.S.C. § 255(a), any FLSA action must be "commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." Here, the Complaint alleges that "Defendant's violations of the FLSA were willful because they received complaints . . . that alerted Defendant[.]" ECF No. 1 at 10. In the alternative, the Complaint alleges that "Defendant's violations were willful because they classified other employees who performed many of the same primary job duties as CCEs as non-exempt[.]" *Id.* The Court finds that this is sufficient. *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018); *Stallings v. Antero Res. Corp.*, 2018 WL 1250610, at *7 (D. Colo. Mar. 12, 2018), *report and recommendation adopted, Stallings v. Antero Res. Corp.*, 2018 WL 2561046 (D. Colo. Apr. 16, 2018); (granting conditional certification for three years based on allegations of willfulness in Complaint). The Court will therefore grant the Motion.

### PROPOSED NOTICE AND CONSENT FORM

Plaintiff has now submitted two versions of the Proposed Notice to be sent to members of the potential collective—one in her Motion, and one in her erroneously-filed Reply.[2] ECF No. 19-6, ECF No. 25-1. Defendant requests the Court allow the parties to confer on the form of notice, "as it does not agree with all aspects of the form Plaintiff proposes." ECF No. 23 at 16. The Court also notes that Plaintiff has failed to attach a

---

[2] On November 8, 2021, Plaintiff filed a Reply which was later marked as "filed in error." ECF No. 25. The Court has considered only the Reply filed on November 9, 2021, which Plaintiff indicates was filed "to correct the document filed as ECF 25." ECF No. 27 at n1.

Proposed Notice with the operative Reply. *See* ECF No. 27. The Court will therefore order Plaintiff to meet and confer with Defendant regarding the wording of a Proposed Notice, and to file an updated Proposed Notice on the docket, indicating whether Defendant opposes.

Plaintiff also requests that the Court authorize notice by mail, email and text message, and enter an order requiring Defendant to disclose identifying information and contact information "within three days from the entry of an Order." ECF No. 19 at 16. Defendant does not object to Plaintiff's request to send notice to potential plaintiffs by email and text, as well as by the United States Postal Service. *See* ECF No. 23. The Court finds that "notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved." *Calvillo*, 267 F. Supp. at 1315. The Court will therefore grant Plaintiff's request. The Court will, however, grant additional time for Defendant to comply.

## CONCLUSION

The Court therefore finds that the allegations in the Complaint, ECF No. 1, supported by the arguments and evidence in the Motion, ECF No. 19, constitute substantial allegations that the putative collective members were, as a group, the victims of a single decision, policy, or plan resulting in violations of the FLSA. For the purpose of the Plaintiff's FLSA claim, this case is conditionally certified as a collective action on behalf of the following FLSA collective members, as defined in Plaintiff's Reply brief:

> All individuals employed by Defendant as Care Coordinators who received pay on a salary basis in the last three years.

ECF No. 27 at 13. *See Abraham v. WPX Energy Prod., LLC*, 322 F.R.D. 592, 611 (D.N.M. 2017) ("[A] plaintiff is not bound to the class definition in the operative complaint for purposes of a [] motion to certify a class."); *Deakin*, 328 F.R.D. at 432 (allowing plaintiffs to modify class in reply brief). However, the Court will also order Plaintiff to clarify the phrase "last three years." ECF No. 27 at 13; *see Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012) ("notice should generally be directed to those employed within three years of the date of the mailing of the notice . . . [h]owever, . . . courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, 'with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'").

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Step-One Notice Pursuant to the Fair Labor Standards Act, ECF No. 19, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall clarify to the Court whether the three years shall run from the date of notice or the date of filing of this action, by no later than **August 15, 2022.**

**IT IS FURTHER ORDERED** that the Court approves the requested notice methods.

**IT IS FURTHER ORDERED** that Defendant shall disclose to Plaintiff's counsel the names, job title, start and end dates, last known addresses, email addresses, and telephone numbers of the potential plaintiffs in a computer-readable format by **August 19, 2022.**

**IT IS FINALLY ORDERED** that Plaintiff shall meet and confer with Defendant, and file an updated Proposed Notice by **August 15, 2022**. Plaintiff shall indicate in a cover

page whether Defendant opposes the updated wording of the Proposed Notice. Defendant shall file its objections, if any, to the Proposed Notice by **August 22, 2022**.

    **IT IS SO ORDERED.**

                                                    */s/ Margaret Strickland*
                                             **MARGARET STRICKLAND**
                                             UNITED STATES DISTRICT JUDGE